THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS PIERAS TARAZONA ET AL., Defendants and Appellants.

No. 15011. Argued July 2, 1951.—Decided July 30, 1951.

*Rafael V. Pérez Marchand* and *Santos P. Amadeo* for appellant. *Víctor Gutiérrez Franqui, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

PER CURIAM: Section 10 of Act No. 220 of May 15, 1948 (Sess. Laws, pp. 738, 748), as amended by Act No. 264 of May 9, 1950 (Sess. Laws, pp. 686, 690) provides:

"Any owner, attorney-in-fact, agent, person in charge, director or manager, of the games prohibited by this Act, shall be guilty of a felony and shall be arrested immediately, and the case brought without delay before the district attorney, with jurisdiction in the matter, and upon conviction, such person shall be punished by imprisonment in the Penitentiary, for a term, which shall in no case be less than one (1) year or more than ten (10) years; *Provided,* that all the trials for violations of this section shall be tried by the court without a jury; *And provided, further,* that no person convicted of a violation of the provisions of this section shall enjoy the benefits of Act No. 259, approved April 3, 1946, as amended by Act No. 177 of May 4, 1949."[1]

Luis Pieras Tarazona, Sotero Montañez Grillo, Luis Montañez Villegas, Juan Valentín Valentín, Francisco Rivera Guzmán, Antonio Rodríguez Rodríguez, Críspulo González Cruz, Eufemio Claudio Claudio, Manuel Delgado Jiménez, Fernando Dávila Rodríguez, Francisco Miranda Fraguada, Arturo Solá Rodríguez, Serafín Torres Rivera and Bernardo Colón Rosario, the first two as managers and the remaining twelve as their agents, were charged in the District Court of Puerto Rico, Caguas Section, of violating the above-copied Section.

After defendants filed motions for suppression of evidence and illegal search and arrest, the parties stipulated to offer, in the first place, evidence in connection therewith, and that the cases be submitted on their merits by said evidence.[2] The court approved the stipulation and the parties introduced ample oral and documentary evidence. Terms were granted for filing memoranda, which were filed, and the court found defendants guilty, sentencing Luis Pieras Tarazona, Sotero Montañez Grillo, and Juan Valentín Valentín to serve from

---

[1] Act No. 259 of 1946, *supra,* establishes the suspended sentence in the judicial system of Puerto Rico.

[2] That was so, although the defendants requested, and the court ordered, separate trials.

five to ten years in the penitentiary; Luis Montañez Villegas to serve from three to ten years in the penitentiary and the rest from two to ten years in the penitentiary at hard labor and without costs. They all appealed to this Court and in support of their respective appeals they allege that the lower court committed the following errors:

(1) In denying a trial by jury which they timely requested;

(2) In overruling their motions for unlawful arrest, unlawful search and suppression of evidence;

(3) In convicting Luis Pieras Tarazona and Sotero Montañez Grillo "as administrators for their own profit of a *banca* of the game known as *bolita*"; and the other defendants "as agents of Luis Pieras and Sotero Montañez Grillo for the said *bolita* game," because the People did not prove said charge beyond a reasonable doubt; and

(4) In actively, unnecessarily and improperly participating in the interrogatories during the hearing of their respective cases, showing passion, partiality and prejudice, until the time of pronouncing sentences; thereby depriving defendants of the fair trial to which they were entitled under the law.

The question raised in the first assignment of errors as to the denial of a trial by jury has already been decided by this Court against their contention. *Rivera* v. *González, Warden*, 71 P.R.R. 626. Defendants themselves so admit. An examination of the cases cited by them does not alter our opinion.

The second error is also groundless. Defendants insisted, in arguing this error, that the court *a quo* merely dismissed their motion for suppression of evidence but kept silent as to their motions for illegal search and illegal arrest. Although said court, in deciding the questions of law raised, stated that "the court understands that there is no ground whatsoever for granting the motion for suppression of evidence . . . and admits in evidence the documentary evidence

submitted by the district attorney," it is undeniable that its purpose was to dismiss the three motions submitted to its consideration. It is clearly shown by the admission in evidence of said documentary evidence and of the subsequent conviction of each and every defendant.

■■ In discussing this error defendants also attack the search warrant and insist that under said warrant detective José M. Padilla was not authorized to arrest and search the persons not named in his sworn statement or in the search warrant. We must say, in the first place, that the search warrant is directed against the thing as in a proceeding *in rem*, notwithstanding the identity of the owner or occupant. *People* v. *Yulfo*, 71 P.R.R. 767, 769. And in the second place as it will be seen hereinafter in the discussion of the following error, each and every one of the defendants were arrested and searched at the time they committed an offense in the presence of the police. See *People* v. *Santos*, 71 P.R.R. 288; *People* v. *Ríos*, 71 P.R.R. 908.

■ The discussion of the third error assigned compels us to point out, even though summarily, some of the evidence for the prosecution that the trial court had before it with regard to each one of the defendants. When the policemen entered the house mentioned in the warrant they heard the tinkle of money and persons talking, and as they went inside they caught Sotero Montañez Grillo, Luis Pieras Tarazona, Juan Valentín Valentín, Luis Montañez Villegas, Leoncio Ruiz,[3] Críspulo González Cruz, Bernardo Colón Rosario and Francisco Rivera Guzmán manipulating, examining, and making a report on *bolita* material which consisted of lists of paper with three digit numbers followed by a dash and another figure to the right. They were looking for the prize number. The policemen took from Pieras Tarazona fifteen lists of paper with numbers written on it for the *bolita* game, as well as $115 in cash and a pencil that was on the table. When Luis Montañez Villegas saw that the material was seized in

---

[3] Leoncio Ruiz was arrested but because he had joined the army a few days before the case was tried, he does not appear as defendant.

possession of Pieras he placed his own on the table from where it was taken by the witness Padilla. On Sotero Montañez Grillo, Sergeant Ortiz found a package of lists of paper with *bolita* numbers written on them. Crispulo González Cruz dropped another package of lists with *bolita* numbers which Sargeant Ortiz picked up. Bernardo Colón Rosario had another package of lists which he threw behind him and Sargeant Ortiz also picked them up. Juan Valentín Valentín was seated at the table with a package of lists of *bolita* numbers. Carlos Gueits picked from the floor several lists of paper with *bolita* numbers on them which Francisco Rivera Guzmán dropped to the floor. Policeman Padilla asked Leoncio Ruiz who were the owners of the *banca* and he answered in their presence that the bankers were Luis Pieras Tarazona and Sotero Montañez; that Sotero then spoke up and said "Well I am not the owner, I am a partner, because there are more partners here." Asked who were the partners Sotero at first refused to reply but later said: "Pieras and Timoteo de Jesús . . . he (referring to Timoteo) does not come, he sends Juan Valentín"; that when Valentín was asked if he was also an owner, he replied: "I represent only Timoteo de Jesús." *The other defendants aided in the examination of the lists searching for the prize number.*[4] Luis Pieras Tarazona gave Francisco Ruiz $2 to let him count the money in the house in question.

*Fernando Dávila Rodríguez* was seated on the steps of the back porch. He took out from his shirt pocket a piece of paper of regular size and threw it on the floor. The paper contained three-digit numbers, a dash, and a number to the right. On the same day that he was arrested with all the others, the lottery had been drawn in Puerto Rico.

*Manuel Delgado Jiménez* had another list of paper with *bolita* numbers, which was taken from him together with $37. He was standing next to Fernando Dávila Rodríguez.

---

[4] It was clear from the judge's questions that said statement referred only to the defendants above mentioned and not to the others.

*Arturo Solá Rodríguez* was taken unaware while he was in the backyard of the searched house with a list of paper with *bolita* numbers and $13.65. He had the money in his pocket. He was leaning on the wall near the stairs, together with six other men, and he had the list against the wall checking it with a pencil.

*Eufemio Claudio Claudio* was near the stairs entering the porch, with a list of *bolita* numbers of three digits, a dash, and other numbers to the right of the list; he was examining it.

*Antonio Rodríguez Rodríguez* was caught when he threw on the floor a list of *bolita* numbers on wrapping paper. He was sitting on the stairs leading from the porch to the backyard. The policemen took $35 away from him.

*Serafín Torres Rivera* and *Francisco Miranda Fraguada* were also taken unaware with *bolita* lists and money in their hands. They had long lists of *bolita* numbers. Both were in the backyard of the searched house.

The transcript of the evidence is truly voluminous and the gist of the evidence against each defendant has been broadly stated. In our judgment it justifies the judgments of conviction rendered against each and every defendant. As we have seen it tended to show that Sotero Montañez Grillo, Luis Pieras Tarazona, Juan Valentín Valentín, Luis Montañez Villegas, Críspulo González Cruz, Bernardo Colón Rosario, and Francisco Rivera Guzmán were caught by the police while they manipulated, examined, and counted the *bolita* material, and furthermore that the first two were partners in the *bolita* business, and the third one, that is, Juan Valentín Valentín was the representative of Timoteo de Jesús. The trial court properly concluded that under § 10 of the Act these seven defendants could be considered as owners, agents, representatives, directors or administrators of the *bolita* game.

As to the other defendants the evidence was to the effect that when the house was searched they were in the back-

yard, at a short distance from the seven above-mentioned defendants; that they were in a group near the stairs; that all of them were caught with the lists of *bolita* numbers in their possession, that they were checking those lists and that on that day the lottery of Puerto Rico had been drawn. Under the attendant circumstances we are of the opinion that the court was justified in holding that these last seven defendants were acting as agents of the unlawful game of. *bolita*.

██ As to the fourth assignment of error, although it is true that the judge that presided over the lower court asked the defendants who testified as well as the witnesses of both sides innumerable questions, from an examination of the transcript we are convinced that he was not moved by passion, prejudice or partiality. Most of his questions were made in order to clear up certain concepts and doubts. Others were only mere repetitions of questions already asked by the defense or by the prosecuting attorney; and very few were immaterial or irrelevant. None of them, however, show passion, prejudice or partiality.

When the district attorney asked a question regarding Timoteo de Jesús, and the defense objected, the court said: "Unfortunately, here we are not trying this man . . . It seems that my colleague does not live in Puerto Rico, I can tell my colleague that in Puerto Rico it is almost universally known that Timoteo de Jesús is engaged in the *bolita* game. . . . It is of common knowledge that that gentleman who is colleague's client is a *bolita* banker." When the defense called the attention of the court as to the fact that Timoteo de Jesús was not one of the defendants, the court decided that: "Summarizing what has happened, possibly there are certain things which are improper and should not go into the record. The question asked by the district attorney, whether you know Timoteo de Jesús, is permitted by the court and should remain in the record. Likewise, the question of whether or not he is

the administrator of a *banca* of *bolita* of Timoteo de Jesús. That should remain in the record, and all the rest be stricken out." Under these circumstances, and since the case was tried by the court, we do not see how this incident could have prejudiced the defendants.

In discussing the fourth error, appellants allege also that another index of passion, prejudice and partiality on the part of the judge was the fact that when he sentenced defendants, he stated that he was glad of having sent to jail the imperial eagles of the *bolita*.

The record demonstrates that a newspaper had published, something regarding certain threats that had been made to the judge by one of the defendants; that the judge explained what had happened and that the defense pointed out that in another section of the newspaper it appeared that the judge had said that the time had come to sentence the imperial eagles of the business. And that the judge then said: "Yes, I do remember that, I was paraphrasing a judgment of the Supreme Court. I told the police and the detectives that I congratulated them because they had brought to me *bolita* bankers. That on former occasions they had brought to me the poor devils that I was compelled to send to jail, when I knew that the bankers walked freely on the streets. That is why I was glad that the imperial eagles of the *bolita* had been sent to jail." We do not see how those words which were uttered when pronouncing sentence several days after the defendants were convicted show passion, prejudice or partiality; especially if it is borne in mind that it was the attorney for the defense himself, who, for the first time, and while the district attorney was testifying as a witness for the defense, made reference to the imperial eagles.

Judgments appealed from will be affirmed.

Mr. Justice Snyder did not participate herein.